**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

---

|                       |   |                                       |
|-----------------------|---|---------------------------------------|
| JONG SHIN,            | : |                                       |
|                       | : | Civil Action No. 15-7248(RMB)         |
| Petitioner,           | : |                                       |
|                       | : |                                       |
| v.                    | : | **OPINION**                           |
|                       | : |                                       |
| UNITED STATES OF AMERICA, | : |                                    |
|                       | : |                                       |
| Respondent.           | : |                                       |
|                       | : |                                       |

---

This matter comes before the Court on Petitioner Jong Shin's ("Shin") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("2255 Mot.," ECF No. 1; Petr's Mem., ECF No. 1-2). The Government filed an answer and brief opposing the motion. ("Answer," ECF NO. 9.) Shin filed a reply brief in support of her motion to vacate. ("Petr's Reply Brief," ECF No. 15.)

Shin then filed a motion for release on bail pending disposition of her § 2255 motion ("Mot. for Bail," ECF No. 22), and a motion to dismiss the Superseding Indictment for Lack of Subject Matter Jurisdiction. ("Mot. to Dismiss," ECF No. 27.) The Government filed a brief in opposition to the motion for bail. ("Opp. to Mot. for Bail," ECF No. 23), and Shin filed a rebuttal ("Petr's Rebuttal," ECF No. 24.) Shin also submitted a Motion for Disqualification Under 28 U.S.C. 455(a) and an Amended Memorandum

of Facts in support thereof ("Disqual. Mot." ECF No. 25; "Am. Mem. of Facts in Supp. of Disqual. Mot." ECF No. 26.) For the reasons discussed below, the motion to disqualify is denied, the § 2255 motion is denied; and the motions for release on bail and to dismiss the Superseding Indictment for lack of jurisdiction are dismissed as moot.

I. BACKGROUND

On April 20, 2011, a federal grand jury returned a four-count Superseding Indictment against Shin and co-conspirator Esther Zhu. (United States v. Shin, 10cr208(RMB)-1 (D.N.J.)(Superseding Indictment, ECF No. 23.)) Count One charged them with conspiracy to commit wire fraud, contrary to 18 U.S.C. § 1343, in violation of 18 U.S.C. § 1349. (Id. at 1.)[1] Count Two charged Shin with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) and contrary to § 1957(a). (Id. at 16.) Counts Three and Four charged Shin and Zhu with making false statements on a loan or credit application, in violation of 18 U.S.C. § 1014, and 18 U.S.C. § 2[2] for properties at 136 South Bellevue Avenue (Count Three) and 1929 Blaine Avenue (Count Four). (Id. at 19, 21.)

---

[1] ECF page citations are to the page of the document assigned by the Court's Case Management/Electronic Case Files (CM/ECF).

[2] 18 U.S.C. § 2 describes the liability of principals and aiding and abetting commission of an offense against the United States.

The jury trial began on October 3, 2011. (<u>United States v.</u> <u>Shin</u>, 10cr208(RMB)-1 (D.N.J.), Trial Tr., ECF No. 65.) Ten days later, the jury found Shin guilty of all charges. (<u>Id.</u>, Jury Verdict, ECF No. 72.) Shin moved for a judgment of acquittal on all counts, pursuant to Federal Rule of Criminal Procedure 29(c). (<u>Id.</u>, Mot. for Acquittal, ECF No. 73.)) This Court denied the motion by Opinion and Order dated April 18, 2012. (<u>Id.</u>, Opinion and Order, ECF No. 81.) On September 10, 2012, judgment was entered and Shin was sentenced to a 186-month term of imprisonment, with a five-year term of supervised release. (<u>Id.</u>, Judgment, ECF No. 95.)

On September 14, 2012, Shin filed a timely notice of appeal. (<u>Id.</u>, Not. of Appeal, ECF No. 96.) The U.S. Court of Appeals for the Third Circuit denied Shin's appeal and affirmed her conviction on March 19, 2014. (<u>Id.</u>, Judgment of USCA, ECF No. 101.)

On direct appeal, the Third Circuit Court of Appeals stated the relevant facts:

> From May 2006 to December 2006, Shin orchestrated a scheme to flip real estate in Atlantic City, New Jersey at a substantial profit by submitting fraudulent loan applications, inflated appraisals, and falsified closing documents to mortgage lenders. Between May and October 2006, Shin purchased seven Atlantic City properties. Without having improved any of the properties, Shin re-sold them at inflated prices to five straw purchasers she had recruited. To lure the straw purchasers, Shin paid them a few thousand dollars and promised to make the

mortgage payments if they submitted mortgage applications, went to the closing, and signed the appropriate paperwork.

To obtain the mortgages, Shin and a mortgage broker at Summit Mortgage Bankers arranged and prepared Uniform Residential Loan Applications (URLAs) for each straw purchaser, containing false statements about the purchasers' employment, income, and plans to reside at the properties. Shin also paid a real estate appraiser to prepare fraudulent appraisals, inflating the value of the properties. Finally, Shin paid a closing agent at Equity Title to prepare fraudulent closing documents that hid the fact that the straw purchasers had not invested any money in the properties, and that Shin (as opposed to the straw buyers) received the loan proceeds in each of the transactions. Shin participated in at least ten fraudulent real estate closings and collected approximately $1.2 million. All of the mortgages eventually went into default and most of the properties were foreclosed upon by the lender. By the end of Shin's scheme, the victim banks were owed an amount exceeding $4,600,000.

. . .

At sentencing, after calculating a Guidelines range of 168–210 months' imprisonment based on a total offense level of 35 and a criminal history category of I, the District Court sentenced Shin to 186 months' imprisonment.

United States v. Shin, 560 F. App'x 137, 138 (3d Cir. 2014).

Shin raised the following arguments on direct appeal:

(1) the District Court's jury instruction on "reasonable doubt" was improper; (2) the District Court plainly erred in admitting co-conspirators' plea agreements during direct examinations; (3) the District Court did not have jurisdiction because there was insufficient evidence of a federal offense;

4

```
                    (4) the sentence imposed was substantively
                    unreasonable;  and  (5)  Shin  received
                    ineffective assistance of counsel at trial and
                    at sentencing.
```

Shin, 560 F. App'x at 139-40.

For her third argument on direct appeal, Shin maintained that she did not violate federal law because she did not personally submit a URLA to a federally insured bank. Id. The Third Circuit stated, "[w]e have never held that to be liable under [18 U.S.C.] § 1014 a defendant must personally submit the false statements to the federally insured bank; rather, use of a third party conduit could suffice." Id. at 141. Further, the Third Circuit noted the Fifth and Ninth Circuits had also held it is enough to convict under § 1014 if the defendant knew the false statements were to be presented to a bank, whether or not that institution was federally insured. Id.

The Third Circuit found the following evidence was sufficient to convict Shin under § 1014: (1) J.P. Morgan Chase Bank ("Chase") provided loans in at least three real estate transactions in which Shin was indicted; (2) Shin prepared false URLAs for at least two of her straw purchasers, and directed them to submit their URLAs to her co-conspirator, Zhu; (3) Zhu submitted the URLAs to Chase; and (4) based on the fraudulent URLAs and other fraudulent documents, Chase funded the loans. Id. The Third Circuit agreed

with this Court that there was sufficient evidence for a jury to find Shin guilty on any of these three alternate theories:

> (1) [Shin's] knowledge, when she prepared the fraudulent loan applications at issue, that they would ultimately be submitted to Chase; (2) [Shin's] aiding and abetting of her co-conspirators in committing these offenses; and (3) the fact that [ ] these offenses were committed in the scope and in furtherance of the wire fraud conspiracy and the acts were reasonably foreseeable consequences of the conspiracy.

Shin, 560 F. App'x at 142.

Shin's also claimed on direct appeal that her trial counsel was ineffective for failing to move to dismiss the indictment on the insufficiency of the charges. Id. The Third Circuit held that Shin could not establish prejudice based on trial counsel's failure to make a motion to dismiss the indictment because the evidence was sufficient for a reasonable jury to convict. Id. Therefore, Shin could not establish prejudice by the alleged failures of counsel. Id.

Shin filed a petition for writ of certiorari. Jong Shin v. United States, 135 S. Ct. 244 (2014). The Supreme Court denied the writ on October 6, 2014. Id. On October 1, 2015, Shin filed the instant Motion to Vacate, Set Aside or Correct Judgment, pursuant to 28 U.S.C. § 2255. (2255 Mot., ECF No. 1.) Shin raised the following grounds for relief:

> Ground One (a)(1), (2)

1.   There was no federal jurisdiction over
Counts One and Two, inter alia, because
there was no showing that petitioner Shin
agreed that funds should be transferred
interstate, as required by the plain
language of the statute, which addresses
only wire communications "in interstate or
foreign commerce."

2.   There was no federal jurisdiction over
Counts 3 and 4 prior to 2009.  Prior to
2009, false information submitted to a
mortgage brokerages was not covered by 18
U.S.C. § 1014 even if those brokerages then
obtained FDIC-insured mortgages for the
applicant.  In 2006, when Shin committed
the acts, there was no federal jurisdiction
over the submission of false information to
mortgage brokerages.  Application of the
Post-2009 version of 18 U.S.C. § 1014 to
Shin's conduct in 2006 violated the Ex Post
Facto Clause.

Ground Two:  Because the Government introduced
perjured testimony, failed to correct perjured
testimony, and argued facts it knew to be
untrue, Jong Shin's constitutional right to
Due Process of Law was violated.

Ground Three (a)(1-6)

1.   Defense counsel was ineffective for
failing to seek to call Esther Zhu to the
witness stand or, if she was unavailable,
to seek a missing witness instruction.  Zhu
made a statement, turned over in 3500
material, that she sold mortgages to other
banks as part of her employment with SMB
and received a 1 point commission for so
doing.  Her testimony would have undermined
the government's theory that Shin aided Zhu
in submitting false information to Chase.

2.   Counsel failed to argue lack of
jurisdiction over the various counts of the
Indictment, as in Point One[.]

3. Defense counsel was ineffective for failing to object to instructions on conspiracy to commit wire fraud.

4. Defense counsel was ineffective for failing to object to Jury Instructions 54, 55 & 56, on Counts 3 and 4, as:

    a. The instructions, as written, violated the ex post facto clause;

    b. The instructions failed to require mens rea; and

5. Defense counsel failed to object to the constructive amendment of the Indictment.

6.[3] Counsel was ineffective for failing to argue the insufficiency of the evidence on Counts 3 and 4 in his Rule 29.

Ground Four: Appellate counsel raised the lack of federal jurisdiction, but ignored the lack of a jurisdictional nexus with regard to Counts 1 and 2, and addressed only Counts 3 and 4, which charged violations of 18 U.S.C. § 1014. Appellate counsel declined to argue prosecutorial misconduct on the basis of the Napue violation.

(2255 Mot., ECF No. 1 at 4-8.)

## II. DISCUSSION

### A. Shin's Motion to Disqualify

Shin moves to disqualify this Court pursuant to 28 U.S.C. § 455(a). (Mot. to Disqual., ECF No. 25). Shin contends the Court should recuse from deciding the instant § 2255 motion because this Court lacked subject matter jurisdiction over the criminal matter

---

[3] The Petition contained two subheadings labeled "5." The Court renumbered the last point as "6."

under 18 U.S.C. §§ 3231 and 1014. (Mot. to Disqualify, ECF No. 25 at 1.) The basis for Shin's motion is that this Court "falsely claimed to the jury that Jong Shin was charged with making a false statement on loan and credit applications to Chase Bank in Violation of Title 18 U.S. Code Section 1014 and 2." (Am. Mem. of Facts in Supp. of Disqual. Mot., ECF No. 26 at 2.) According to Shin, Counts Three and Four of the Superseding Indictment charge her with making false statements to SMB, but Shin was convicted of making a false statement to Chase Bank, which was not charged in the indictment, and there was no evidence of a Chase Bank loan application. (Id.)

Further, Shin accuses this Court of accepting six innocent persons' guilty pleas for non-federal charges of signing SMB loan applications in 2006. (Id. at 2-3.) Finally, Shin contends this Court made a false statement via the Internet on April 18, 2012, by denying Shin's judgment of acquittal on the basis that Shin made false statements in connection with mortgage applications to Chase. (Id. at 4.)

28 U.S.C. § 455(a) requires a United States District Judge to disqualify herself in any proceeding where her impartiality might reasonably be questioned. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. U.S., 510 U.S. 540, 555 (1994)(citing United States v. Grinnell Corp., 384 U.S. 563, 583 (1966). Because Shin's allegations against

this Court are based on this Court's rulings, and further are without basis, as revealed in the discussion of her claims below, the Court denies Shin's motion to disqualify pursuant to 28 U.S.C. § 455(a).

B.  Legal Standard

1.  28 U.S.C. § 2255

Section 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. . . .

28 U.S.C. § 2255.

The grounds that may be raised pursuant to § 2255 are limited. United States v. Addonizio, 442 U.S. 178, 184 (1979). Section 2255 generally "may not be employed to relitigate questions which were raised and considered on direct appeal," unless there was an intervening change in the governing substantive law or other exceptional circumstances. United States v. DeRewal, 10 F.3d 100, 105 n. 4 (3d Cir. 1993)(citations omitted).

Additionally, a defendant cannot raise a procedurally defaulted claim in a § 2255 motion unless she makes a showing of cause and prejudice or actual innocence. Massaro v. United States,

538 U.S. 500, 504 (2003); <u>Hodge v. United States</u>, 554 F.3d 372, 379 (3d Cir. 2009). A claim is procedurally defaulted if the petitioner could have but failed to raise the claim on direct appeal. <u>Id.</u> The "cause" that is necessary to excuse a procedural default must be something beyond a defendant's control that cannot be fairly attributed to her. <u>McCleskey v. Zant</u>, 499 U.S. 467, 493 (1991). The "prejudice" necessary to excuse a procedural default means that the alleged error worked to a defendant's "actual and substantial disadvantage." <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)(emphasis omitted).

The petitioner bears the burden of proof in a motion under § 2255. <u>Gov't of Virgin Islands v. Nicholas</u>, 759 F.2d 1073, 1081 (3d Cir. 1985). A motion under § 2255 will be granted only if the sentence results "in a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962); <u>United States v. Cleary</u>, 46 F.3d 307, 311 (3d Cir. 1995).

## 2.   Ineffective Assistance of Counsel

There are two parts to an ineffective assistance of counsel claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the

> Sixth Amendment. Second, the defendant must
> show that the deficient performance prejudiced
> the defense.   This requires showing that
> counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose
> result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).

The first part of the test "requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (quoting Hill v. Lockhart, 474 U.S. 52, 57 (1985)(quoting Strickland, 466 U.S. at 688)). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id., 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Yarborough v. Gentry, 540 U.S. 1, 8 (2003)(citing Bell v. Cone, 535 U.S. 685, 702 (2002); Kimmelman v. Morrison, 477 U.S. 365, 382 (1986); Strickland, 466 U.S. at 689; United States v. Cronic, 466 U.S. 648, 656 (1984)).

Prejudice, the second part of the Strickland test, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at

694. "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" <u>Collins v. Sec. of Pennsylvania Dept. of Corr.</u>, 742 F.3d 528, 547 (3d Cir. 2014)(quoting <u>Strickland</u>, 466 U.S. at 694).

"Prejudice is viewed in light of the totality of the evidence at trial …." <u>Collins</u>, 742 F.3d at 547 (citing <u>Rolan v. Vaughn</u>, 445 F.3d 671, 682 (3d. Cir. 2006)). A court is not required to address both components of the ineffective assistance inquiry; "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

The <u>Strickland</u> test applies to claims of ineffective assistance of appellate counsel. <u>Smith v. Robbins</u>, 528 U.S. 259 (2000). An attorney's decision about which issues to raise on appeal are strategic, and an attorney is not required to raise every possible non-frivolous issue on appeal. <u>Albrecht v. Horn</u>, 485 F.3d 103, 138 (3d Cir. 2007); <u>Robbins</u>, 528 U.S. at 272; <u>Jones v. Barnes</u>, 463 U.S. 745 (1983).

C.   <u>Procedurally Defaulted Claims in the § 2255 Motion</u>

The Government contends the following claims raised by Shin are procedurally defaulted: (1) the claims embedded in Ground One objecting to the jury instructions and the sufficiency of the evidence in Counts One and Two, relating to interstate wire communications; (2) Ground One, the sufficiency of the evidence on

Counts 3 and 4; and (3) Ground Three, perjured testimony and prosecutorial misconduct. (Answer, ECF No. 9 at 10-15.)

Shin responded that she can meet the fundamental miscarriage of justice exception to procedural default because newly discovered evidence shows she is actually innocent. (Petr's Reply Brief at 23.) The newly discovered evidence is an April 2016 email from AUSA Carrig to Attorney, Ruth M. Liebesman (Id., Exh. Q.) Shin contends the email proved the prosecution introduced at trial non-existing evidence, Government Exhibit 321A, and fraudulent evidence, Exhibit 321B. (Id.) Referring to trial transcript pages 160-61, Shin concludes Exhibit 321A does not exist because Chase employee Darrell Adkins testified Exhibits 321A and 321B for the property at 148 S. Bellevue Ave were neither requested nor supplied to the U.S. Attorney's office by Chase on August 8, 2011. (Id. at 24.)

Shin offers three additional bases for her factual innocence: (1) the facts charged in the indictment in Counts 1, 3 and 4 did not constitute a violation of 18 U.S.C. § 1014 at the time of the alleged violation: (2) the Superseding Indictment failed to allege a federal offense; and (3) Government Exhibits 321A and 321B were fabricated by a source other than Chase Bank. (Id. at 23-25.) Shin also asserts her appellate attorney was ineffective for failing to argue on appeal the issues raised in the § 2255 motion. (Id. at 25.)

Here, the actual innocence and ineffective assistance of counsel claims Shin asserts to excuse her procedural default require analysis of the same claims she raises in her § 2255 motion. Because the underlying claims are without merit, as discussed below, Shin has not shown cause and prejudice resulting from ineffective assistance of her appellate counsel or actual innocence to excuse her procedural default.

D.   Merits of the Grounds for Relief in the § 2255 Motion

1.   Ground One (a)(1)

In Ground One (a)(1), Shin contends this Court lacked jurisdiction over Counts One and Two in the Superseding Indictment because there was no showing that she agreed that funds should be transferred interstate, as required by the plain language of the statute which addresses only wire communications "in interstate or foreign commerce. (2255 Mot., ECF No. 1 at 4.) Shin asserts that a jurisdictional element of the offense of conspiracy to commit wire fraud is an agreement to transmit signals by wire, and the court did not require the jury to find that that an agreement to transmit signals by wire was part of the conspiracy. (Petr's Mem., ECF No. 1-2 at 16.) Shin then strays to a challenge of the jury instructions. She notes the court instructed the jury on the commerce element of Count One, wire fraud conspiracy:

> It is sufficient if the government proves
> beyond a reasonable doubt that Jong Shin knew
> the use of the wire … in interstate commerce

> would follow in the ordinary course of
> business or events, or that Jong Shin should
> reasonably have anticipated that wire …
> communication in interstate commerce would be
> used.

(Petr's Mem., ECF No. 1-2 at 16.) Then Shin raises a sufficiency

of the evidence claim, concluding there was no showing at trial

that she agreed funds should be transferred interstate, as required

by the plain meaning of 18 U.S.C. § 1343. (Id. at 17.) Shin further

contends that the Government was required to prove an interstate

nexus, and an ordinary negligence standard is insufficient. (Id.)

In response, the Government notes that what Shin labeled as

a jurisdictional challenge is really an objection to the jury

instructions and the sufficiency of the evidence as to interstate

wire communications. (Answer, ECF No. 9 at 13.) The Government

argues the essence of the wire fraud statute is not a specific

agreement to transmit signals by wire. (Id. at 11.) "[T]he use of

wires need not be an essential element of the scheme." (Id.,

quoting United States v. Keller, 395 F. App'x 912, 915 (3d Cir.

2010)(quoting Schmuck v. United States, 489 U.S. 705, 710-11

(1989)).

Regarding Shin's attack on the jury instructions for failing

to require a specific agreement to transmit signals, the Government

notes this Court's jury instructions on conspiracy and wire fraud

track the Third Circuit Model Jury Instructions, which are

supported by Third Circuit case law. (Answer at 12, citing Keller,

16

395 F App'x at 914-916; <u>United States v. Andrews</u>, 681 F.3d 509, 528-29 (3d Cir. 2012)).

Further, the Government submits that the Court's jury instructions required more than negligence to convict Shin of conspiracy to commit fraud. (Petr's Mem., ECF No. 1-2 at 14.) The jury was instructed that it had to find Shin joined the conspiracy knowing of its objective to commit wire fraud, and intending to join a conspirator to achieve the objective. (<u>Id.</u>) Thus, the jury was required to find intent to defraud, defined for them as "knowingly and with the intention or purpose to deceive or cheat." (<u>Id.</u>)

The Government also responded to Shin's argument that the evidence at trial was insufficient to prove her awareness that the transactions would involve interstate commerce. (<u>Id.</u>) The Government argues the evidence that Shin orchestrated fraudulent property transactions that involved wire transfers of funds from New Jersey to New York banks was sufficient to prove conspiracy to commit wire fraud. (<u>Id.</u> at 15-16.)

In her Reply Brief, Shin's argument focuses on the jurisdictional challenge to the allegations in the Superseding Indictment. (Petr's Reply Brief, ECF No. 15 at 11.) Shin contends the facts alleged in support of violation of 18 U.S.C. § 1349, conspiracy to commit an offense, fall beyond the scope of the underlying wire fraud offense, 18 U.S.C. § 1343, as a matter of

statutory interpretation. (Id.) Count Two, money laundering, is deficient she argues because it relies on the predicate act of wire fraud. (Id. at 13.)

Specifically, Shin contends the facts alleged in the Superseding Indictment were insufficient because the Government alleged only that Shin and Zhu prepared and submitted false loan applications and other documents to SMB. (Id. at 12-13.) Shin also notes that the prosecutor requested a special verdict at trial on whether the Count One offense "affected a financial institution." (Id. at 13.) She argues SMB is a mortgage lender, not a financial institution. (Id.)

Beginning with the argument Shin presented in her Reply Brief,[4] the Court looks to the Superseding Indictment to establish jurisdiction. See e.g. U.S. v. Huet, 665 F.3d 588, 595 (3d Cir. 2012). "Although the Government is not required to set forth its entire case in the indictment, 'if the specific facts' that are alleged 'fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation,' the indictment fails to state an offense." Huet, 665 F.3d at 595 (3d Cir. 2012)(quoting United States v. Panarella, 277 F.3d 678, 685 (3d Cir. 2002)). "[A] district court's review of the facts set forth in the

---

[4] The Court notes Shin was represented by counsel for the initial submission of her § 2255 motion and memorandum in support thereof. Counsel later withdrew, and Petitioner submitted her reply brief *pro se*, raising some new claims not contained in her § 2255 motion.

indictment is limited to determining whether, assuming all of those facts as true, a jury could find that the defendant committed the offense for which he was charged." Huet, 665 F.3d at 595-96 (citing Panarella, 277 F.3d at 685; United States v. DeLaurentis, 230 F.3d 659, 660 (3d Cir. 2000)).

Here, Shin challenges whether SMB is a "financial institution" as the phrase is used in the wire fraud statute, 18 U.S.C. § 1343. The version of the wire fraud statute in effect in 2006, when the alleged violations occurred, states:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

By the plain terms of the statute, a person can violate the law whether or not the scheme to defraud by means of wire in interstate commerce affects a financial institution. The penalty, however, is enhanced if it is a financial institution that is harmed.

Moreover, the wire fraud statute requires only that means of wire are used in interstate commerce to transmit a scheme or artifice to defraud. Count One of the Superseding Indictment

charges Shin and her co-conspirators of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, by devising and executing a scheme to defraud by purchasing seven residential properties in Atlantic City, New Jersey and recruiting Straw Purchasers to buy the properties at an inflated value. (<u>United States v. Shin</u>, 10cr208(RMB)-1 (D.N.J.) Superseding Indictment, ECF No. 23, §1a.)

Esther Zhu, a co-conspirator, was employed by a mortgage brokerage firm, Summit Mortgage Bankers "SMB." (<u>Id.</u>, §1b). "Based upon false and fraudulent information provided by Jong Shin and mortgage broker Esther Zhu, SMB made and/originated several mortgage loans to Jong Shin and the various Straw Purchasers." (<u>Id.</u>) Financial institutions, including Chase, which purchased certain loans from SMB at the real estate closings, were affected by false statements made to induce them to lend funds for the purchase of the properties at inflated prices. (<u>Id.</u> at 12-15.) Proceeds from the sales of certain properties at fraudulently inflated prices were wired from New Jersey Bank accounts to Shin's personal bank account in New York. (Trial Tr., ECF No. 89 at 119-139, 180-182.)

These allegations in the Superseding Indictment establish jurisdiction over Count One, conspiracy to commit wire fraud. Shin's challenge to Count Two, conspiracy to commit money laundering in violation of 18 U.S.C. 1956(h), relies on the same faulty argument about the sufficiency of allegations of conspiracy

20

to commit wire fraud. (Petr's Reply Brief, ECF No. 15 at 15.) Thus, Count Two of the Superseding Indictment also establishes federal jurisdiction.

Turning now to the arguments presented in support of Ground One(a)(1) in Shin's initial brief in support of her § 2255 motion, Shin asserts that this Court did not require the jury to find that that an agreement to transmit signals by wire was part of the conspiracy, a jurisdictional element. Shin is wrong.

This Court's instruction that it was sufficient for the Government to prove, beyond a reasonable doubt, that Jong Shin knew or reasonably anticipated that the use of the wire in interstate commerce would follow in the ordinary course of business or events, and that Shin joined the conspiracy knowing of its objective to commit wire fraud, and intending to join a conspirator to achieve the objective was supported by law. (United States v. Shin, 10cr208(RMB)-1 (D.N.J.)(Jury Instructions, ECF No. 70 at 27-47.) Wire fraud has three essential elements: (1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use, or cause of use, of interstate wire communications in furtherance of the scheme. United States v. Keller, 395 F. App'x 912, 914 (3d Cir. 2010).

The first element can be met "'[w]here one does an act with knowledge that the use of the mails will follow in the ordinary

course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used.'" <u>Keller</u>, 395 F. App'x at 914 (quoting <u>United States v. Bentz</u>, 21 F.3d 37, 40 (3d Cir. 1994)(internal citations omitted in original). This Court's instruction was correct as to the first element.

The instruction on conspiracy was also proper. Guilt may be found where "the person 'ha[d] knowledge of the illicit objectives of the fraudulent scheme and willfully intend[ed] that those larger objectives be achieved.'" <u>United States v. Weaver</u>, 220 F. App'x 88, 94 (3d Cir. 2007)(quoting <u>Genty v. Resolution Trust Corp.</u>, 937 F.2d 899, 908–09 (3d Cir. 1991)). Thus, it is sufficient if the defendant "knew that he was participating in the fraudulent scheme alleged in the indictment." <u>Id.</u> at 95.

Shin's final argument in Ground One (a)(1), is that the evidence at trial was insufficient to prove her awareness that the transactions would involve interstate commerce. The trial record contains evidence that Shin received loan proceeds, from loans made based on the fraudulent representations she orchestrated, by wire transfer from a New Jersey bank to her personal account in a New York bank. (<u>United States v. Shin</u>, 10cr208(RMB)-1, (D.N.J.) (Trial Tr., ECF 89 at 119-140.) Shin knew that New Jersey and New York residents and entities were involved in her overall mortgage fraud scheme, and thus had reason to anticipate the transactions

would require use of interstate wire communications. The evidence was sufficient to convict Shin of conspiracy to commit wire fraud. Ground One (a)(1) of the § 2255 motion is denied.

## 2. Ground One (a)(2)

In Ground One (a)(2), Shin argued this Court convicted her under the Post-2009 version of 18 U.S.C. § 1014, but the alleged illegal conduct occurred under the 2006 version of the statute. (Petr's Mem. ECF No. 1-2 at 18-20.) She contends that in 2006 the statute did not make it illegal to submit false information to a mortgage broker, even if the false information was used to obtain an FDIC-insured mortgage. (Id. at 20.) Shin asserts that in the 2006 version of the statute mortgage brokers and originators were not in the "list of covered institutions" in the statute, they were only added by amendment in 2009. (Id.)

Shin concedes that, under the 2006 statute, case law established that a defendant did not need to know that the institution she was trying to influence with false statements was federally insured, as long as the proof showed the defendant knew it was a bank that she intended to influence. (Id. at 21, citing United States v. Thompson, 811 F.2d 841, 844 (5th Cir. 1987); United States v. McDow, 27 F.3d at 135-36)). Thus, Shin concluded that because the Government produced no direct evidence that she knew SMB would acquire funds from another entity to make her loan, her conviction could not stand. (Petr's Mem., ECF No. 1-2 at 22,

23

citing McDow.) Shin also noted, however, that case law in 2006 provided:

> If [the defendant] had intended by making false statements to [a] leasing corporation to influence the bank as well, the fact that the statements were not made to the bank would not prevent his conviction…. It would be enough if [the defendant] had known that the loan he was getting from [a] leasing corporation would be assigned to the bank.

(Id. at 22 n.2, quoting United States v. White, 882 F.2d 250, 254 (7th Cir. 1989)).

In addition to violating the Ex Post Facto Clause, Shin argued that Counts 3 and 4 of the Superseding Indictment charged conduct that was not in violation of 18 U.S.C. § 1014; therefore, the indictment should be dismissed and the conviction vacated. (Petr's Mem., ECF No. 1-2 at 23; Petr's Reply Brief, ECF No. 15 at 14.)

The Government maintains that Counts Three and Four each allege that Chase Bank is a federally insured bank, and that Esther Zhu sent a false URLA and false appraisal to Chase. (Answer, ECF No. 9 at 16.) Counts 3 and 4 charge that Zhu and Shin knowingly made false statements for the purpose of influencing Chase in issuing mortgage loans, in violation of 18 U.S.C. § 1014, as in effect in 2006. (Id.)

In her Reply Brief, Shin asserts Counts Three and Four, as a matter of law, do not properly allege offenses under 18 U.S.C. § 1014, which criminalizes making a false statement in a loan

application to an FDIC lender. (Petr's Reply Brief, ECF No. 15 at 15.) She contends the District Court lacked subject matter jurisdiction over Counts Three and Four, mandating that Shin's conviction and sentence be vacated, and that Counts Three and Four be dismissed with prejudice. (Id.)

The Court begins with Shin's Ex Post Facto argument. "The ex post facto prohibition [in the Constitution] forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" Weaver v. Graham, 450 U.S. 24, 28 (1981). For a penal law to be ex post facto, "it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." Id. at 29 (citations omitted).

The 2006 version of 18 U.S.C. § 1014 provided, in pertinent part:

> Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of … any institution the accounts of which are insured by the Federal Deposit Insurance Corporation … shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both….

In 2009, the statute was amended, and it read, in pertinent part:

> Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of **the**

> **Federal Housing Administration**, … any
> institution the accounts of which are insured
> by the Federal Deposit Insurance Corporation,
> … **or a mortgage lending business, or any
> person or entity that makes in whole or in
> part a federally related mortgage loan as
> defined in section 3 of the Real Estate
> Settlement Procedures Act of 1974** … shall be
> fined not more than $1,000,000 or imprisoned
> not more than 30 years, or both….

18 U.S.C. § 1014 (effective May 2009)(amendments in bold).

In statutory interpretation, courts "assume that 'Congress expresses its intent through the ordinary meaning of its language' and therefore begin 'with an examination of the plain language of the statute.'" Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth., 539 F.3d 199, 210 (3d Cir. 2008)(quoting Rosenberg v. XM Ventures, 274 F.3d 137, 141 (3d Cir. 2001)). If the language of the statute is unambiguous, no further inquiry is necessary. Id.

In 2006, the plain language of § 1014 unambiguously made it illegal to make a false statement "for the purpose of influencing … any institution the accounts of which are insured by the Federal Deposit Insurance Corporation." The statute did not require that a false statement be made directly to an FDIC-insured bank; it is enough if the false statements were to be presented to a bank. Shin, 560 F. App'x at 141. Counts Three and Four of the Superseding Indictment alleged such a scheme by Shin. This Court had subject-

matter jurisdiction, and Shin's conviction did not violate the Ex Post Facto Clause. Ground One (a)(2) is denied.

### 3. Ground Two

In Ground Two of her § 2255 motion, Shin claimed the Government violated her right to due process by introducing and failing to correct perjured testimony that it knew to be untrue. (Petr's Mem., ECF No. 1-2 at 23-26, citing Napue v. Illinois, 360 U.S. 264, 269 (1959)). Shin contends that Trial Exhibit 523, a HUD1 form for the property at 133 South Wilson Avenue, shows the property was funded by SMB. (Id. at 24.)

Shin asserts that the identity of the entity that funded the purchase of 133 South Wilson Avenue is not an element of the crime, rather the issue is to whom the false statements were made, and SMB was the only "recipient of false information." (Id.) Thus, Shin contends it was perjury when Mr. Adkins, an employee of Chase Bank, testified that a loan application (URLA) for 133 South Wilson Avenue was in Chase's files, and Chase funded the purchase. (Id.)

Shin also asserts Special Agent Altieri's testimony about the property at 133 South Wilson Avenue was perjury. (Petr's Mem., ECF No. 1-2 at 24-26.) Altieri testified that the wire transfer record, Trial Exhibit 528B, showed Chase purchased the mortgage for 133 South Wilson Avenue. (Id. at 24.) The wire was sent on November 20, 2006, but Ms. Rampersaud [the straw purchaser] closed on the mortgage with SMB on November 10, 2006. (Id. at 25.) According to

Shin, the prosecution did not attempt to correct this misstatement. (Petr's Mem., ECF No. 1-2 at 25.)

Additionally, Altieri testified that Shin or one of the straw buyers made mortgage applications directly to Chase Bank. (Id. at 25.) Shin argues Altieri was speculating, and this was false because not a single Chase URLA was ever signed, and all mortgages started with a URLA to SMB. (Id.) Shin contends this false testimony was the only evidence that she or a straw purchaser had signed a Chase loan application or that the scheme to submit false applications to SMB in any way anticipated or included forwarding a false SMB loan application to Chase, and resulted in her erroneous conviction. This was compounded, she alleges, when the Government argued in closing that the loan applications were submitted to Chase Bank. (Id. at 26.)

The Government submits that there was no perjury, and Shin misinterpreted the testimony. (Answer, ECF No. 9 at 17.) As to Darrell Adkins' testimony, Shin stated Adkins testified Chase Bank funded the purchase of 133 South Wilson Avenue because the loan application (URLA) was in Chase's files. (Id. at 21.) In fact, Adkins testified that the URLA for 133 South Wilson Avenue was in Chase's files, but the application came to them from Summit Mortgage [SMB]. (Id. at 22.) He further testified that this was a document that a Chase underwriter would have received and considered in deciding whether to fund the mortgage. (Id.)

28

The Government also explained the context of Special Agent Altieri's testimony. (Answer, ECF No. 9 at 17-20.) He testified that SMB both originated mortgage applications and funded some of the mortgages until the loans could be resold. (Id. at 19.) The trial exhibits and testimony established that Chase, a federally insured bank, directly funded mortgages in three of the fraudulent real estate transactions[5] that were part of the Count 1 conspiracy, and subsequently purchased mortgages which had originally been funded by SMB for four of the fraudulent real estate transactions that were part of the Count 1 conspiracy.[6] (Id. at 17-18.)

For the mortgages directly funded by Chase Bank, many of the documents signed at the closings, including the HUD1 Settlement Statements, Mortgages and Notes, indicated that Chase bank was the lender at the time of sale. (Id. at 18-19, referring to Trial Exhibits 153, 154A, 155A, 155B, 156, 158, 158B, 162 and 166.) There was testimony that Shin orchestrated each of the deals, was present at each of the closings, and signed some of the documents in which Chase was the direct lender. (Id. at 18-19.) For example, the Government notes Chase directly funded the sale of 136 South

_____

[5] This included the August 29, 2006 sale of 136 South Bellevue; the August 1, 2006 sale of 148 South Bellevue; and the November 17, 2006 sale of 1929 Blaine Avenue.

[6] This included the September 26, 2006 sale of 150 South Bellevue; the June 30, 2006 sale of 138 South Bellevue; the November 10, 2006 sale of 133 South Wilson; and the December 6, 2006 sale of 512 Magellan.

Bellevue on August 29, 2006, and Shin signed all of the closing documents on behalf of her ex-husband, Steven Boswell. (Answer, ECF No. 9 at 18-19.)

Special Agent Altieri also testified that there were often multiple copies of the same document that he obtained from the different entities involved in the transaction, including SMB, Chase, Equity Title and others. (Id. at 19.) He could tell by the Bates stamps on the bottom of each exhibit which entity it had come from. (Id.) He also explained that the "typical procedure is at the time of settlement [for] the lending institutions [to] have the borrower sign the application again as like a failsafe to make sure everything is true and accurate. So, for one mortgage loan, we may have three loan applications." (Id.)

Altieri further testified that it is the role of an originator, like SMB, to obtain the information from the borrower, the borrower's income, place of employment, and to complete the loan application. (Answer, ECF No. 9 at 19-20.) In instances when the loan made by SMB was sold to Chase prior to closing, Shin had to sign "as a final application at the closing table." (Id. at 20.) Therefore, the Government maintains Altieri's testimony was true. (Id. at 21.)

In reply, Shin argues Altieri's and Adkin's testimony that Shin or an alleged straw buyer made loan applications directly to Chase was proved false by Trial Exhibits 160B, 151, 621A, and 621B,

all of which were SMB loan applications (Petr's Reply, ECF No. 15 at 17). Shin concludes that she was convicted despite the fact that the Government presented no real evidence of loan applications to Chase at trial. (Id. at 19.)

First, as to Shin's claim that Altieri and Adkins lied in their testimony by stating that Chase funded the mortgage for the property at 133 South Wilson, Shin misconstrues the testimony. Altieri testified that SMB was the originator of the November 10, 2006 purchase of 133 South Wilson, and SMB sold the loan to Chase on November 20, 2006. (ECF 89 at 176-77, ECF No. 90 at 9, 15, 18-19, 25, 31-34.) Adkins testified that the loan application for this mortgage was in Chase's files, but his testimony indicated that the loan application came from SMB, the originator. (Trial Tr., ECF No. 90 at 99-100, 111, 117.) There was no perjury.

Second, the testimony of Altieri and Adkins was not perjury because evidence was introduced of loan applications made to and received by Chase on behalf of the straw purchasers recruited by Shin, including Government Exhibits 151, 162, 621B, 631B. Therefore, Ground Two of the § 2255 motion is denied.

### 4. Ground Three (a)(1)

In Ground Three (a)(1), Shin maintains her trial counsel was ineffective for failing to seek to call Esther Zhu to the witness stand or, if Zhu was unavailable, to seek a missing witness instruction. (2255 Mot., ECF No. 1 at 6-7.) In support of this

31

claim, Shin quotes the FBI notes from its May 29, 2008 interview of Esther Zhu. (Petr's Mem., ECF No. 1-2 at 27.) Zhu told the FBI that after she received "the aforementioned" loan applications, she sent them to Chase Bank in Florida, whom SMB used to underwrite the loans. (Id., Ex. C.) Zhu said she knew SMB would sell the loans to FDIC insured financial institutions immediately after closing. (Id.) Zhu also stated she was in possession of faxes from Shin to herself, outlining all the information to put in the loan applications. (Id.) Zhu knew the financial institutions would rely on the truth and accuracy of the loan applications. (Id.)

Shin contends there was no evidence in the record that Shin knew or cared what Zhu or SMB would do with the loan applications they received, and counsel should have interviewed Zhu to confirm Shin had nothing to do with what SMB did with the loan applications. (Id. at 28.) Further, because Zhu was permitted to repatriate to the People's Republic of China and was unavailable for trial, Shin contends her counsel should have requested a missing witness instruction. (Petr's Mem., ECF No. 1-2 at 29-30.) Shin notes that at the time of her trial, Zhu had plead guilty to conspiracy to commit wire fraud and was awaiting sentencing, and Zhu was on the Government's witness list for Shin's trial. (Id. at 30.) Defense counsel, however, agreed to a jury instruction that the jury could not draw any inferences from the fact that Zhu was not named in the indictment as a defendant. (Id.)

Shin asserts she was prejudiced by counsel's failure to call Zhu because Zhu could have testified that her agreement with Shin ended with the submissions of false applications to SMB. (Id. at 31.) Shin claims Zhu was within the control of the Government because she pled guilty to violation 18 U.S.C. § 1014 but had not yet been sentenced; therefore she had good reason to invoke the Fifth Amendment prohibition on self-incrimination. (Id.) Under such circumstances, Shin argues her trial counsel should have requested a jury instruction that the defense was entitled to an inference that the Government's failure to call Zhu as a witness suggested her testimony would have been adverse to the Government. (Id. at 32.)

The Government responded that Shin's ineffective assistance claim fails because Zhu's testimony would not have helped Shin, but in any event, Shin could not establish prejudice based on failure to interview or call Zhu to testify. (Answer, ECF No. 9 at 24.) The Government relies on the Third Circuit's holding that the evidence was sufficient to convict Shin despite the fact that she did not personally submit a false URLA to a federally insured bank. (Id. at 25.)

Furthermore, the Government contends counsel was not ineffective in failing to request a missing witness instruction because such an instruction is appropriate only when a witness is in control of one party. (Id. at 26.) The Government submits that

Zhu did not agree to cooperate with the Government and was not within its control. (Answer, ECF No. 9 at 26.) Moreover, the fact that Zhu pled guilty and might have invoked the Fifth Amendment if called to testify rendered her unavailable to both parties and did not support the missing witness instruction. (Id. at 26-27, citing United States v. Adigun, 998 F.Supp.2d 356, 367 (M.D. Pa. 2014)).

Failure to interview Shin or call her to testify did not prejudice Shin. First, if Zhu had testified that Shin had no knowledge that the false information in the SMB loan applications would be forwarded to other banks, the Government could have impeached Zhu with testimony that Shin appeared at the closings and signed documents containing false information for loans originated by SMB but ultimately funded by an FDIC-insured bank.

Second, counsel was not ineffective for failing to request a missing witness instruction because such an instruction was inappropriate. "[A] missing witness instruction is not appropriate when a witness is equally available (or equally unavailable) to both parties." United States v. Henries, 98 F. App'x 164, 166 (3d Cir. 2004)(citing e.g., United States v. Vastola, 899 F.2d 211, 235 (3d Cir.), vacated on other grounds, 497 U.S. 1001 (1990). Zhu's unavailability was premised on the assumption she would invoke her Fifth Amendment right not to incriminate herself because she had pled guilty and was awaiting sentencing. Zhu was unavailable to both parties, and if the missing witness instruction

34

had been requested, it would have been denied. Therefore, Ground Three (a)(1) is denied.

     5.   <u>Ground Three (a)(2)</u>

In Ground Three (a)(2) of her § 2255 motion, Shin claims that her counsel was ineffective for failing to move to dismiss the Superseding Indictment for the reasons alleged in Ground One of the motion. The Court has considered Ground One and determined the jurisdictional and related claims are without merit.

"Many cases have held that Section 2255 generally 'may not be employed to relitigate questions which were raised and considered on direct appeal.'" <u>United States v. DeRewal</u>, 10 F.3d 100, 105 n.4 (3d Cir. 1993)(quoting <u>Barton v. United States</u>, 791 F.2d 265, 267 (2d Cir. 1986)(collecting cases). The Third Circuit Court of Appeals determined the evidence was sufficient to convict on Counts Three and Four for violation of 18 U.S.C. § 1014. <u>Shin</u>, 560 F. App'x 137, 141-42 (3d Cir. 2014)(finding "more than enough evidence" to convict Shin under § 1014, and affirming the District Court's denial of Shin's Rule 29(c) motion for acquittal). Counsel was not ineffective for failing to raise the meritless claims concerning the sufficiency of the indictment, the jury instructions and the sufficiency of the evidence. <u>See</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 205 (3d Cir. 2000)(where underlying claim failed, defense counsel was not ineffective for failing to raise it). Ground Three (a)(2) is denied.

6. Ground Three (a)(3)

Shin's third claim of ineffective assistance of trial counsel is that counsel failed to object to the jury instructions on conspiracy to commit wire fraud. (Petr's Mem., ECF No. 1-2 at 33.) Shin incorporated her arguments from Ground One (a)(1). Shin further asserts that where criminal statutes require activity in interstate commerce, the government must prove an interstate nexus. (Id. at 35.) Thus, she states "[i]n a conspiracy charge, an agreement to cause interstate wire communications should be required. (Id.) She contends the ordinary negligence standard, what a person "should reasonably have anticipated," cannot suffice to support a criminal conspiracy conviction for wire fraud." (Id.)

The Government opposes Ground Three (a)(3), arguing that this Court properly used the Third Circuit model jury instructions, and the jury instructions correctly instructed the jury on the *mens rea* required to convict. (Answer, ECF No. 9 at 27.)

As discussed in Ground One (a)(1) above, this Court's jury instructions on conspiracy and wire fraud are supported by the law. An agreement "to cause interstate wire communications" is not required for conspiracy to commit wire fraud. U.S. v. Veras de los Santos, 184 F. App'x 245, 253 (3d Cir. 2006)(the interstate element of wire fraud is a jurisdictional fact, and the presumption of a scienter requirement does not apply.)

The *mens rea* is required for the scheme to defraud rather than the use of wires. See Keller, 395 F. App'x 912, 915 (3d Cir. 2010)(the second element of the wire fraud statute is the defendant's knowing and willful participation in a scheme or artifice to defraud). It is only necessary for a person to have reasonably anticipated that the fraud would involve communication by wire. See Andrews, 681 F.3d 509, 529 (3d Cir. 2012)(evidence was sufficient for conviction on wire fraud where use of interstate wire communications in the scheme to defraud was reasonably foreseeable.) Neither trial nor appellate counsel was ineffective for failing to challenge proper jury instructions. See e.g. Senk v. Zimmerman, 886 F.2d 611, 617 (3d Cir. 1989)(counsel could reasonably have concluded there was no basis to challenge the jury instructions). Therefore, Ground Three (a)(3) is denied.

7.    Ground Three (a)(4)

Shin asserts in Ground Three (a)(4) that her trial counsel was ineffective for failing to object to the jury instructions on the three ways in which the jury could find her guilty on Counts Three and Four, violation of 18 U.S.C. § 1014. (Petr's Mem., ECF No. 1-2 at 27.) Shin contends the instructions violated the Ex Post Facto Clause and lacked a *mens rea* requirement. (Id. at 29-33.) Shin's second argument, that the jury instructions lacked a *mens rea* requirement, is based on her premise that "it appears from the statutory language [of § 1014] that the purpose of

37

Congress was to protect a long list of particularly identified federally-insured or federally-chartered financial institutions, not to protect the mortgage lending business as an industry important to interstate commerce." (Petr's Mem., ECF No. 1-2 at 42.)

The Government argues counsel was not ineffective for failing to raise meritless claims because the jury instructions on Counts 3 and 4 properly described the *mens rea* requirement. (Answer, ECF No. 9 at 27-29.) The jury was instructed it had to find knowledge that the statements were false when made, and find intent to influence a bank to issue the mortgage loans which were identified in the indictment. (Id.) The instructions under Pinkerton[7] and aiding and abetting theories also properly instructed the jury on the *mens rea* required. (Answer, ECF No. 9 at 29.) The Government

---

[7] In Pinkerton v. United States, 328 U.S. 640, 647 (1946), the Supreme Court held:

> The criminal intent to do the act is established by the formation of the conspiracy. Each conspirator instigated the commission of the crime. The unlawful agreement contemplated precisely what was done. It was formed for the purpose. The act done was in execution of the enterprise. The rule which holds responsible one who counsels, procures, or commands another to commit a crime is founded on the same principle. That principle is recognized in the law of conspiracy when the overt act of one partner in crime is attributable to all.

contends § 1014 does not require proof that the defendant knew the bank was federally insured. (Answer, ECF No. 9 at 29, citing e.g., United States v. Key, 76 F.3d 350, 353 (11th Cir. 1996); United States v. Thompson, 811 F.2d 841, 844 (5th Cir. 1987); United States v. Lentz, 524 F.2d 69, 71 (5th Cir. 1975); United States v. Sabatino, 485 F.2d 540, 544 (2d Cir. 1973)).

This Court has considered and rejected Shin's claim that her conviction violated the Ex Post Facto Clause because the 2006 version of § 1014 did not include mortgage lending businesses in the list of covered institutions. The 2006 version of the statute plainly stated that a person is guilty of violating § 1014 if she makes a false statement for the purpose of influencing in any way the action of any institution, the accounts of which are insured by the Federal Deposit Insurance Corporation. This Court instructed the jury accordingly.[8]

Shin's objections to the *mens rea* requirement in the jury instructions for conviction under § 1014 are premised on the faulty conclusion that the Government was required to prove Shin knew the false statements would be presented to an FDIC-insured bank. This Court's instructions, including the conspiracy and aiding and

---

[8] The jury was instructed that "[t]he law makes it a crime to knowingly make a false statement to a federally insured bank for the purpose of influencing the bank to make a loan." (United States v. Shin, 10cr208(RMB)-1 (D.N.J.)(Trial Tr., ECF No. 93 at 48.)

abetting instructions, properly required the jury to find that Shin intended to influence the lending decision of a bank with a false statement.[9] For these reasons, Ground Three (a)(4) is denied.

8.   Ground Three (a)(5)

---

[9] This Court instructed:

> To find a person guilty of the crime of making false statements on loan and credit and applications you must be convinced that the government has proved each of the following four elements beyond a reasonable doubt.
>
> First, that J.P. Morgan Chase Bank was federally insured;
>
> Second, that a person made a false statement to J.P. Morgan Chase Bank;
>
> Third, that the person knew the statement was false when it was made;
>
> and Fourth, that the person intended to influence the bank to issue the mortgage loans identified in the indictment.
>
> It is not necessary, however, to prove that the institution involved was in fact influenced or misled. What must be proven is that the person intended to influence the lending decision of the bank with a false statement. To make a false statement to a federally insured bank, the person need not directly submit the false statement to the institution, it is sufficient that the person submitted the statement to a third party knowing that the third party will submit the false statement to the federally insured bank.

(United States v. Shin, 10cr208(RMB)-1 (D.N.J.)(Trial Tr., ECF No. 93 at 48-49.)

Shin contends in Ground Three (a)(5) that her counsel was ineffective for failing to object to the constructive amendment of the indictment by virtue of the jury charge. (Petr's Mem., ECF No. 1-2 at 42.) Shin asserts that the Fifth Amendment requires the charges upon which a person is convicted be contained in the indictment against her. (Id. at 43.) Thus, "a[n] indictment is constructively amended when evidence, arguments, or the district court's jury instructions effectively 'amend[s] the indictment by broadening the possible bases for conviction from that which appeared in the indictment." (Id., quoting United States v. Lee, 359 F.3d 1984, 208 (3d Cir. 2004)). Shin asserts a constructive amendment to the indictment constitutes "'a per se violation of the fifth amendment's grand jury clause." (Id., quoting United States v. Castro, 776 F.2d 1118, 1121-22 (3d Cir. 1985)).

Shin contends that Counts 3 and 4 of the Superseding Indictment charged that Shin and Zhu knowingly made false statements for the purpose of influencing Chase. (Id.) However, Counts Three and Four did not state to whom the false statements were made for the purpose of influencing JPM Chase. (Id.) Shin acknowledges that the factual allegations of Count 1 are incorporated into Counts 3 and 4, and include allegations that false statements were made to SMB, which sold the mortgages to JPM Chase. (Id. at 44.) Shin argues, however, that this Court did not instruct the jury that Shin was charged with submitting false loan

applications to SMB for the purpose of influencing JPM Chase, but rather that Shin was charged with submitting false loan applications to JPM Chase, and this constructively amended the indictment. (Petr's Mem., ECF No. 1-2 at 44-45.) Shin contends she had no notice that she was charged with submitting applications to Chase. (Id. at 45.)

The Government counters that Counts 3 and 4 by themselves clearly allege that Shin's co-conspirator Esther Zhu sent the false statements to Chase. (Answer, ECF No. 9 at 29.) And, the instructions properly instructed the jury on the three theories approved by this Court and by the Third Circuit, and did not constructively amend the indictment. (Id. at 29.) The Government points to its closing argument, where it told the jury:

> Now, at this point you might ask one question, which is I understand all that, but Jong Shin herself did not personally submit these applications to Chase. As Judge Bumb instructed you, there are three different ways that Jong Shin can be found guilty of this charge even though she did not herself personally submit the applications to Chase.

(Id. at 20.)

Shin replied that this Court instructed the jury that 18 U.S.C. § 1014 makes it a crime to knowingly make false statements to a Federally Insured Bank, which SMB was not. (Petr's Reply Brief, ECF No. 15 at 21.)[10]

---

[10] In her reply brief, Shin raised the new claim that:

This Court properly instructed the jury that "[t]he law makes it a crime to knowingly make a false statement to a federally insured bank for the purpose of influencing the bank to make a loan." (United States v. Shin, 10cr208(RMB)-1 (D.N.J.)(Trial Tr., ECF No. 93 at 48.) As discussed above, § 1014 does not require that the false statement be made directly to an FDIC-insured bank, only that the false statement be made for the purpose of influencing such a bank to make a loan.

The jury instructions, consist with the allegations in the Superseding Indictment, charged that Shin could be found guilty of violating § 1014 if she herself submitted the false statement in a loan application to a bank, or if she aided and abetted another

---

The Superseding Indictment Count One charged under object of the conspiracy, "which caused more than one million dollars to various mortgage lenders..." (Superseding Indictment ¶8) Mortgage lenders such as SMB are not financial institutions. Judge Bumb, however, instructed the jury a financial institution is any bank insured by FDIC (Tr. at 965). At trial, however, the jury instruction and a special verdict submitted by the Government, and given by the Court, constructively amended Count One of the Indictment, as the Special Verdict asked whether the offense charged in Count One "affected a financial institution" (Tr. at 918).

(ECF No. 15 at 20-21.) The Court addressed Shin's jurisdictional claim based on the phrase "affected a financial institution" in Section II.D.2 above, and found it to be without merit. For the same reasons, the Court finds the jury instructions did not constructively amend the indictment as to Count One.

in submitting the false statement to a bank, or if she conspired with others [such as Esther Zhu] to submit a false statement to a bank [by forwarding the SMB loan applications to Chase Bank]. Therefore, the jury instruction did not constructively amend the Superseding Indictment, and trial counsel was ineffective for failing to make this claim. Ground Three (a)(5) is denied.

### 9. Ground Three (a)(6)

Shins asserts in Ground Three (a)(6) that her counsel was ineffective by failing to argue the insufficiency of the evidence on Counts 3 and 4 in the Rule 29 motion for judgment of acquittal. (Petr's Mem., ECF No. 1-2 at 45-46.) This claim is factually incorrect. Defense counsel moved for judgment of acquittal on Counts 3 and 4 based on insufficiency of the evidence. (Brief in Supp. of Mot. for Judgment of Acquittal, ECF No. 73-1 at 10.) This Court denied the motion, and the Third Circuit Court of Appeals affirmed. See Shin, 560 F. App'x at 141-42 ("[t]he District Court denied Shin's Rule 29(c) motion for a judgment of acquittal on the grounds that a jury could have found Shin guilty based on any of three alternate theories …. We agree.") Ground Three (a)(6) is denied.

### 10. Ground Four

In Ground Four, Shin asserts her appellate counsel was ineffective for failing to raise the issues Shin raised in her § 2255 motion because the issues raised by appellate counsel on

direct appeal were weaker than the arguments raised herein. (Petr's Mem., ECF No. 1-2 at 53.) This Court has reviewed Shin's 2255 claims and finds they have no merit. Therefore, appellate counsel was not ineffective for failing to raise these claims on direct appeal.

E.  New Claims Raised in the Shin's Reply Brief

Shin raised new claims of ineffective assistance of counsel in her reply brief. First, she alleges her counsel was ineffective for failing to interview and subpoena employees of Chase and all Chase Bank Underwriters who were involved in processing the loans at issue. (Petr's Reply Brief, ECF No. 15 at 22.) Shin argues defense counsel should have shown that Chase Bank's underwriters did not rely on Shin's false information on loan applications from SMB, and that the false information was not material. (Id.)

Although moving parties are not typically permitted to raise new issues and present new factual materials in a reply brief because the opposing party is entitled to notice and an opportunity to respond, Shin's new claims are without merit, and a response from the opposing party is not required. For this new claim, Shin relies on Deborah Davis's testimony that, as a Chase underwriter, she reviewed and cleared paystubs. (Petr's Reply Brief, ECF No. 15 at 22.) Shin asserts that neither she nor Zhu provided any paystubs to Chase with respect to the purchase of the property at 512 Magellan, which SMB funded on December 6, 2006. (Id. at 23.)

Therefore, Shin concludes false statements on SMB loan applications were not material to Chase approving the loan. (Id.)

Shin also contends Chase Bank Underwriter Ann Keaugh and someone from SMB altered Shin's original SMB loan application for the property at 138 S. Bellevue to change the purchaser's monthly income and the total monthly payment. (Id. at 23, citing Gov't Exhibits 402, 409 and D2.) Shin asserts she did not sign the new, altered SMB loan application; therefore, the fraudulent information Shin gave SMB did not impact the ultimate issuance of the loan. (Id.)

These claims fail on the prejudice prong of Strickland. Darrell Adkins testified that he was a quality assurance analyst at Chase in 2006, and he reviewed underwriting of Chase loans. (United States v. Shin, 10cr208(RMB)-1 (D.N.J)(Trial Tr., ECF No. 90 at 84.) Although he did not do the underwriting for the loans at issue, at trial he reviewed the documents submitted in support of the loans and described what information was important to underwriters. For example, he testified length of employment, income, and combined housing expenses of the borrower are very significant to the ability to pay the mortgage. (United States v. Shin, 10cr208(RMB)-1 (D.N.J)(Trial Tr., ECF No. 90 at 89-90.) Primary residence of the borrower is important because someone living in home is more likely to make the payments (Id. at 93-94.) Knowing where the cash for closing comes from is important because

someone who puts down money is more likely to make payments. (Id. at 95.)

Special Agent Altieri submitted the evidence he had obtained by subpoena into the record. (Id., ECF No. 89 at 70-116). He testified concerning the false representations that were made as to each property purchase at issue. (Id. at 149-194; ECF No. 90 at 3-41.) The false representations included the borrower's employment, monthly income, primary residence and where the cash for closing came from, as well as the fraudulent appraisals for the real estate flips. Id. The evidence fully supported the conclusion that the false statements were material to the issuance of each loan at issue here.

Contrary to Shin's contention that evidence of Chase Underwriter Ann Keaugh changing information on Shin's loan application for his initial purchase of the property at 138 South Bellevue, Avenue, the record indicates that Shin was complicit in the false representations made with respect to the flip of the property at 138 South Bellevue Avenue on June 28, 2006, when Shin sold the property to Tula Rampersaud. (See testimony of Tula Rampersaud, Trial Tr., ECF No. 92 at 73-100.)

For these reasons, if counsel had called the Chase underwriters who reviewed the relevant loan applications to testify, there was little chance the outcome of the trial would

have been different. Therefore, Shin cannot show the prejudice required by Strickland.

Shin's next set of new ineffective assistance of counsel claims are based on the failure to object to prosecutorial misconduct. (Petr's Reply Brief, ECF No. 15 at 26-28.) Shin asserts the Government committed prosecutorial misconduct by (1) introducing evidence that did not exist [Gov't Exhibit 321A]; introducing false evidence that Gov't Exhibit 321B was supplied by Chase Bank [citing Exhibit O to Petitioner's Reply Brief]; (3) introducing Gov't Exhibit 151, which appears to be inauthentic because it is missing a Bates stamp from Chase; (4) submitting Gov't Exhibit 621A, stamped with the date of November 9, 2016, a date that was in the future; and (5) that Gov't Exhibits 251A and 251B are both for the first loan on the property, and the Government represented that it used the letter "A" for first loans and the letter "B" for second loans, and further Exhibit 251B is not a complete or true and correct document. (Id. at 27-29.)

"To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." United States v. Liburd, 607 F.3d 339, 344 (3d Cir. 2010)(citing Greer v. Miller, 483 U.S. 756, 765 (internal quotations omitted)). Courts must determine whether the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due

48

process in light of the entire proceeding." Id. (quoting United States v. Morena, 547 F.3d 191, 194 (3d Cir. 2008)(internal quotations omitted).

The parties stipulated to the authenticity of all of the Government Exhibits complained of by Shin, and Special Agent Altieri explained how he obtained and numbered the exhibits. (United States v. Shin, 10cr208(RMB)-1 (D.N.J.) Trial Tr., ECF No. 89 at 70-116.) While it appears that the Government moved to submit Government Exhibit 321A into evidence, which may have been a misstatement of the exhibit number,[11] this "nonexistent" exhibit did not prejudice Shin because it was not presented to the jury as evidence. The record were properly authenticated, and none of these new issues raising questions about the authenticity of the Government's exhibits so infected the trial with unfairness as to deny Shin her right to a fair trial.

F.   No Evidentiary Hearing is Required

A district court may summarily dismiss a motion brought under Section 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'" United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994) (quoting United States v. Day, 969 F.2d 39, 41–42 (3d Cir. 1992)). Here, where most of Shin's claims are an attempt to relitigate

---

[11] See United States v. Shin, 10cr208(RMB)-1 (D.N.J.) Trial Tr., ECF No. 89 at 97.)

issues decided on direct appeal "dressed in different legal garb," the record conclusively shows Shin is not entitled to relief, and an evidentiary hearing is unnecessary. See De Welles v. United States, 372 F.2d 67, 69–70 (7th Cir.) (litigation "of trial issues under different labels or on expanded allegations that could have been made in the first instance is not contemplated by section 2255"), cert. denied, 388 U.S. 919 (1967)).

IV.  CERTIFICATE OF APPEALABILITY

The Court must assess whether a certificate of appealability should issue. A litigant may not appeal from a final order in a proceeding under 28 U.S.C. § 2255 without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability shall not issue unless there is a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Based on the discussion above, reasonable jurists would not find it debatable that any of the constitutional claims raised have merit.

V.    CONCLUSION

For the reasons discussed above, Shin's motion to disqualify and the § 2255 motion are denied; and the motions for release on bail and to dismiss the Superseding Indictment for lack of jurisdiction are dismissed as moot.

An appropriate order follows.

Date:  April 11, 2018                    s/Renée Marie Bumb
                                         RENÉE MARIE BUMB
                                         United States District Judge